IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

AGNES KOLE,

    Plaintiff,

v.

FCI DANBURY,
US BUREAU OF PRISONS,
DONNA ZICKEFOOSE OR SUCCESSOR
    Warden of FCI Danbury,
FELIPE RODRIGUEZ,
    Associate Warden, FCI Danbury,
WAYNE SCHOONMAKER,
    Chief, Inmate Services,

    individually and in their
    official capacities,

    Defendants.

FILED

2009 NOV 17 P 2:02

COMPLAINT

Civ. Action No. 3:09cv1865(JCH)

## I.   Jurisdiction & Venue

A.   This is a civil action to address the deprivation of rights secured by the Constitution of the United States and other federal law. This Court has jurisdiction under 28 USC 1331 and 1343(a)(3); 5 USC 702; 42 USC 2000bb-1(c) and 2000cc-1(a). Plaintiff's claim for injunctive relief is authorized by 28 USC 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

B.   The District of Connecticut is an appropriate venue under 28 USC 1391(b)(2) because it is where events giving rise to this claim occurred.

## II.   Plaintiff

C.   Plaintiff Agnes Kole is and was at all times mentioned herein a prisoner of the U.S. government in the custody of the U.S. Bureau of Prisons. She is currently confined at FCI Danbury in Danbury, CT.

## III.   Defendants

D.   Defendants FCI Danbury and the U.S. Bureau of Prisons are executive agencies or components thereof responsible for custody of federal prisoners. Defendant Donna Zickefoose or her successor is legally responsible for

the overall opeation of FCI Danbury. Defendant Felipe Rodriguez is responsible for executive decisions for the operation of FCI Danbury. Defendant Wayne Schoonmaker is responsible for commissary operations at FCI Danbury.

## IV. Facts

E. Until early 2007, FCI Danbury made available to Jewish inmates at that facility a Special Purchase Order (SPO) program whereby Jewish inmates could purchase Kosher for Passover food items from the Aleph Institute to supplement their special diets during the Passover season. The Aleph Institute is a national, nonprofit organization that advocates for Jewish prisoners and supplies Kosher for Passover food items at a significant discount. In 2007, FCI Danbury instituted a $100 spending limit on these SPO purchases. Kole grieved that limit via the BoP administrative remedy process. Thereafter, DCI Danbury rescinded the SPO Kosher for Passover program in its entirety and instead selecteda few Kosher for Passover food items to be regularly available on the commissary list. Kole grieved that decision and instituted a lawsuit in this Court in 2007, alleging that the rescission of the SPO program was unconstitutional in various respects. That petition was denied. See 551 F.Supp.2d 147 (DCT 2008). An appeal from that denial is pending in the Second Circuit US Court of Appeals (Dkt # 08-2427-pr)..

In early 2009, Defendant Wayne Schoonmaker, with the permission of Defendants Donna Zickefoose and Felipe Rodriguez, changed the vendor used to supply the Kosher for Passover food items. The Aleph Institute was deleted and another vendor selected. This change resulted in significant price icnreases for the Kosher for Passover items on the commissary list. Some increases were several hundred pecent higher. This change made it very difficult to purchase the Kosher for Passover items. See attached Exhibits.

Upon inquiry, the Defendants claimed that the vendor change was made to ensure that the Kosher for Passover food items would be available year-round to the general inmate population. However, similar holiday-unique items are available for Christians during Christmas and for Muslims during Rammahdan only during those respective seasons. These holiday-unique items are not made available year-round to the general inmate population. As a result, they do not have prhibitive pricing. Because of the prohibitively high pricing of the Kosher for Passover food items, Kole and other Jewish inmates at FCI Danbury were unable to obtain these items during the 2009 Passover season.

Kole grieve this change as violating her ability to practice her faith and as retaliation for the prior lawsuit. The prison denied her grievance on April  , 2009; the Northeast Region upheld that denial on May 15, 2009 and the BoP Central Office upheld it again on September 24, 2009..

## V. Exhaustion of Legal Remedies

F. Kole used the BoP administrative remedy system to try to solve this problem by requesting reinstatement of the Aleph Institute as supplier. All of her grievances were denied on the dates noted above. See Exhibits.

## VI. Legal Claims

G. Kole realleges and incorporates by reference ¶s A-F, above.

H. The change in vendor for Kosher for Passover food items available on the FCI Danbury commissary violates Kole's constitutional and other federal rights. It unduly impinges on Kole's ability to exercise her religion by circumscribing, via exorbitant price hikes, the practical availability of religious diet items, albeit supplementary. It violates Kole's equal protectin rights because it produces a negative, disparate impact on the Jewish inmates as compared to the Christian and Muslim inmates. Finally, it violates Kole's First Amendment rights because it is a policy with no

reasonable basis that retaliates for Kole's prior resort to the grievance and judicial processes on related dietary policy.

I. Kole has no plain, adequate or complete remedy at law to redress these wrongs. Kole has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the injunctive and other relief which Kole seeks.

## VII. Prayer for Relief

WHEREFORE, Kole respectfully prays that this Court enter judgment granting her:

J. A preliminary and permanent injunctive order directing all named Defendants to terminate their current vendor and to reinstate the Aleph Institute as the seasonal vendor for Kosher for Passover food items during the Passover season, to include availability of some warm food items as offerred by Aleph.

K. Compensatory damages against each Defendant jointly and severally, and punitive damages against each Defendant, in amounts to be determined.

L. A jury trial on all issues triable by jury.

M. Kole's suit costs, if any.

N. Any additional relief this Court deems just, proper and equitable.

Dated: 15-11-09

Respectfully submitted,

_____
Agnes Kole

### VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except ast ot matters alleged on informaton and belief and as to them I believe them to be true. I certify under penalty of perjury that the fregoing is true and correct.

Executed at Danbury, CT on ___15-11-09___

_____
Agnes Kole

# Exhibits

AN 1330.13C
March 23, 1999

## ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES
## INFORMAL RESOLUTION FORM

**NOTICE TO INMATE**: You are advised that prior to receiving and filing a Request for Administrative Remedy Form, you **MUST** attempt to informally resolve the complaint through your Correctional Counselor. Briefly state complaint below and list what efforts you have made to resolve your complaint informally. Also, please state names of staff contacted.

Date Informal Resolution Form Issued by Correctional Counselor: 03/16/09 SRM

INMATE'S NAME: KOLE Agnes   NUMBER: 18423-050   QUARTERS: 1A West

1. Complaint: I am complaining about Commissary's change in how they are handling Kosher for Passover food selection, pricing and availability. The Commissary has stopped using the Aleph Institute as its source for Kosher for Passover items (even though we do not need these items yr-round but only for Passover). As a result, items are expensive and priced with a mark-up, against BoP policy.

2. Efforts made to informally resolve: I spoke w/Mr. Schoonmacher, head of commissary, who advised he was following direction. I then spoke with Mr. Rodriguez, and the Warden, who said she would check into it. I haven't heard back.

Names of Staff contacted: see above.

Inmate's Signature: X [signature]   Inmate's Number X 18423-050

**CORRECTIONAL COUNSELOR'S COMMENTS**:

1. Date Returned to Correctional Counselor: 03/19/09 SRM

2. Efforts made to informally resolve: A response was prepared by Inmate Services - Commissary Supervisor addressing your concerns about the handling of Kosher Foods in the Comm. Stop. The answer to your question is that all Kosher items placed now and throughout the past year have not been marked up. They are being sold at cost. See attached.

3. Names of Staff contacted: MR Schoonmaker

Date Informally Resolved: _____   Signature [signature]
Or                                           (Counselor)
Date Issued: _____   3/15/09 1530

A02-033L

Distribution:  I.  If complaint is informally resolved, forward original to Warden (Attention: PARALEGAL SPECIALIST)

II. If complaint is NOT informally resolved, forward original attached to Administrative Remedy Form to Warden (Attention: PARALEGAL SPECIALIST)

Request to Staff Response
Kole, Agnes, #18423-050

In response to your Request to Staff dated March 19, 2009, in which you questioned the selection, pricing and availability.

Upon investigation it was determined that we did initially used Aleph, which provided a discount. However, they could not meet the demand for the amount of products we needed, so we purchased the same items from another vendor.

It was also decided by the Executive Staff that we would carry these items on a "year round" basis. However, since the items needed to be "Kosher for Passover," we needed to go to another one of our vendors. Since most "Kosher for Passover" products are only normally sold prior & during Passover, we would be paying a different price to maintain these items on a yearly basis.

Since last year we have carried, three different chocolate bars, matzo cracker, macaroons, and a 4-pk. grape juice box. Although not brought in specifically for last year's Passover, we also added a Kosher for Passover tuna, year round. All of these products, except the grape juice & macaroons, have been a stock item since then. These two items were very slow movers, so when we ran out, we didn't restock until this year. All items now, and throughout the past year have not been marked-up, they are being sold at cost. In addition to the above mention, we also added a 4-pk. of apple juice boxes this year.

/ss/                                                    3/19/2009
_____            _____
Wayne Schoonmaker, Support Services Supervisor     Date

Delivered
3/19/09
1530

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

Issued 03/19/09, SRM

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **KOLE, Aghes**  | 18423-050 | 1A | FCI Danbury
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A- INMATE REQUEST** I am grieving the selection and sale of Kosher for Passover (K/P) food items on FCI Danbury commissary for the 2009 Passover season. In 2008, litigated in Conn. district court the fact that FCI Danbury switched from allowin Jewish inmates to obtain K/P food items via SPO purchases to simply putting a few K/P items on the regular commissary list for purchase by all inmates. Although the district court found the selection in 2008 of which items would be put on the list was not retaliatory and did not violate my 1st Amendment rights, that decision is pending on appeal in the 2d Circuit. Moreover, at the 2008 hearing, FCI Danbury staff testified that its selection of K/P items was made from the discoun supplier, the Aleph Institute (a nonprofit ministry for Jewish inmates). Indeed, Aleph supplies the vast majority of BoP facilities nationwide. Since that hearin FCI Danbury staff have apparently decided that the selection of K/P food items should be available year-round. Consequently, staff determined it could no longe use Aleph as a vendor because, supposedly, it could not meet the prison's year-long demand. See 3/19/09 staff informal resolution response. Staff changed vendors, and now has approx 6 K/P items (choc.bars, matzo, macaroons, grape and appl juice and tuna). However, because the Commissary no longer uses Aleph as its

_____      X _____
DATE                                            SIGNATURE OF REQUESTER

**Part B- RESPONSE**

_____      _____
DATE                                            WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                CASE NUMBER: _____

----

CASE NUMBER: _____

**Part C- RECEIPT**

BP 9 Attachment
Kole, Agnes

supplier (at least during the Passover season), all of these items are significantly higher in price than they would be if purchased from Aleph, some double or more. BoP Program Statement 4500.06 (2/19/09), ch. 3, p 12, provides that during the Passover season, K/P items shall not be marked up. Just as with Christmas or Ramadan holiday commissary items, policy contemplates that the relevant period for item availability is the actual holiday season. For this reason, it does not make sense that the Commissary would change its vendor (with a dramatic increase in price) in order to accommodate year-long supply. The relevant period to supply is the Passover season. The lack of a legitimate reasoned basis for this policy change supports the conclusion that the change was retaliation for my 2008 litigation. So does the fact that the Passover item are being treated differently than Christian or Muslim holiday items; that is, because they are singled out for year-long distribution, the price is substantially higher during the relevant holiday season. This policy change also differs from staff testimony at the 2008 hearing, where it was represented that Aleph was the Danbury supplier of K/P items. Finally, given the dramatic price increase, it is not clear that there is in fact no mark-up on these items.

Based on all of the above, I request that, for the 2009 Passover season, FCI Danbury commissary resume its "no-mark-up" use of Aleph Institute as its exclusive K/P supplier. Aleph indicates it can meet inmate demand. I also request that at least 1 item from the Aleph list be a warm entre.

Thank you.

**U.S. Department of Justice**
Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __Kole, Agnes__   __18423-050__   __1A__   __FCI Danbury__
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

**Part A - REASON FOR APPEAL**

I am appealing FCI Danbury's denial of my request that the commissary revert to use of the Aleph Institute as its supplier of Kosher for Passover food items on commissary. FCI Danbury asserts that it needed to change its supplier to "meet the needs of the Jewish inmate population" year-round. This rationale is disingenuous. Kosher for Passover food items are only needed during the Passover season, which is typically less than a 2 week period. So, too, the Christian and Muslim inmates have specialty items available to them just during their special holiday seasons of Christmas and Ramadan. Because Jewish inmates only need Kosher for Passover items during Passover, FCI Danbury's stated rationale is not legitimate, it allows an inference that the change was retaliatory for my recourse to federal courts on a related issue in 2008. Retaliation can occur because of an inmate's recourse to legal redress even if her effort was not successful. Clearly, the change of dropping Aleph as supplier was damaging because prices are significantly higher under the new supplier - as much as 2 or 3 times higher. Where FCI Danbury's stated rationale is illogical, it permits a conclusion that the rationale is only pretense and the real motivation is retaliation for redress to courts (albeit unsuccessful).

__4-12-09__
DATE                                              SIGNATURE OF REQUESTER

**Part B - RESPONSE**



_____                              _____
DATE                                               REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                         CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**
                                                   CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT: _____

_____                              _____
DATE                                               SIGNATURE, RECIPIENT OF REGIONAL APPEAL

**KOLE, Agnes**
Reg. No. 18423-050
Appeal No. 531530-R1
Page One

---

### PART B - RESPONSE

You appeal the decision of the Warden at FCI Danbury regarding your request for the Commissary to use the Aleph Institute as its supplier of kosher-for-Passover (KFP) food. You state the rationale for the Commissary changing suppliers to meet the needs of the Jewish inmate population year round is disingenuous since KFP food items are only needed during the Passover season. You also state the new supplier's prices are significantly higher and feel the real motivation is retaliation for your recourse to federal courts on a related issue brought against FCI Danbury in 2008.

Program Statement 4500.06, <u>Trust Fund/Deposit Fund Manual</u>, provides guidelines for the Warden and designated staff to decide, based on the composition and character of the institution population, which items are to be sold in the commissary. The Program Statement also encourages institution staff to expand the availability of foods for Islamic and Jewish adherents when costs are comparable and products meet the needs of the institution. As indicated by the Warden, for administrative and logistical reasons, it was determined that carrying KFP items year round would better enable FCI Danbury to meet the needs of the Jewish inmate population. Since the Aleph Institute could not meet this need, a new supplier was sought. The items available are sold at cost and the prices reflect the current changes in the economy. We find your claim of retaliation is without merit and no further relief is warranted. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: May 15, 2009

D. SCOTT DODRILL
Regional Director

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Kole, Agnes          REG. NO. 18423-050     UNIT 1A     INSTITUTION FCI Danbury
      LAST NAME, FIRST, MIDDLE INITIAL

**Part A - REASON FOR APPEAL**

I am appealing the NE Region's denial of my request that FCI Danbury revert to use of the Aleph Institute at its supplier of Kosher for Passover food items on comissary. FCI Danbury asserts that it needed to change its supplier to "Me the needs of the Jewish inmate populaton" year round. I believe this reasonb is pretextual and that the change of suppliers was in fact retaliation for my 2008 lawsuit against FCI Danbury on a related issue. The Trust Fund program statement encourages expansion of foods for Islamic and Jewish inmates <u>when cos are comparable.</u> As indicated in my BP 9 and 10, the costs are nowhere near comprable. Under the new supplier, the costs are as much as 2 or 3 times highe than with the AlephInstitute. For this reason, the purchase of Kosher for Pass over food items has dropped dramatically. Neither we Jewish inmates, nor the others, can afford them. During this past 2009 Passover season, the Jewish inmates expereinced real hardship because we could not supplement any of our Kosher for Passover meals. The Christian and Muslim inmates have specialty ite available to them just during their special holiday seasons. We Jewish inmates only need the Kosher for Passover food items during Passover. It is illogical and pretextual to make them availableyear ronnd.

DATE 6-5-09                SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____
DATE                                                     GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                              CASE NUMBER: _____

**Part C - RECEIPT**                                     CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

                                                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

**Administrative Remedy No. 531530-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal in which you request the Commissary use the Aleph Institute as its supplier for Kosher for Passover food. You object to the Commissary changing suppliers and state that the new supplier's prices are significantly higher and feel the reason for the change is in retaliation for your recourse to the courts on a related issue.

Our review reveals the Warden and Regional Director adequately responded to the issues you raised in your appeal. Program Statement 4500.06, Trust Fund/Deposit Fund Manual, states that within guidelines, the Warden and designated staff shall decide based upon the composition and character of the institution population, what items to sell in the commissary. As noted by the Warden, for administrative and logistical reasons, staff determined that carrying Kosher for Passover items year round would better enable the institution to meet the needs of the Jewish inmate population. Being that the Aleph Institute could not meet this need, a new supplier was sought. Furthermore, the items in the Commissary reflect current changes in the economy.

We do not find any evidence to support your allegations. Accordingly, your appeal is denied.

9/24/2009
Date

Harrell Watts, Administrator
National Inmate Appeals

```
Sales Invoice  ---S.B.U.---
Danbury FCI
MAIN
Account No. 04359017      DAN0003
CRONAN, ELIZABETH MARIE
03/04/2009 09:49:50 AM TX#1932033    49

BEGINNING BALANCES:
Available Balance is $170.21
Spending Limit Balance is $72.50
Account Balance is $170.21
===========================================
Qty   Description               Price
===========================================
 3    Debit Card                $3.00
20    FOREVER STAMP             $8.40
 1    BUTTERFINGER BAR          $1.35
 1    MANE & TAIL COND          $3.55
 1    MAINE &TAIL SHAMP         $3.55
-1    BUTTERFINGER BAR         ($1.35)
 1    TOLLHOUSE COOKIE          $2.85
 1    APPLE JUICE               $4.90
 1    KRAFT VELVEETA CH         $3.00
 1    KRAFT VELVEETA CH         $3.00
 1    COFFEE CREAMER            $1.70
 1    BARBEQUE POTATO C         $1.60
 4    RAMEN CHICKEN SOU         $1.00
 1    REFRIED BEANS             $1.30
 1    CORN TORTILLAS            $1.30
 1    TORTILLA CHIPS            $2.80
 1    AJAX DISHWASHING          $1.55
 1    TROPICAL BLEND            $1.05
 1    TROPICAL BLEND            $1.05
 1    PLAIN BAGEL               $1.10
 1    TOOTHBRUSH SOFT           $0.95
 1    BLISTEX LIP BALM          $1.50
 1    FANTASIA IC OLIVE         $3.50
 1    FISH STEAKS IN HO         $1.10
 1    AAA BATTERY               $1.45
 1    AAA BATTERY               $1.45
 1    JUMBO PONYTAIL HO         $3.20
 1    FLOUR TORTILLAS           $1.20
 1    GEFEN MACAROONS C         $5.00
-1    FANTASIA IC OLIVE        ($3.50)
-1    FISH STEAKS IN HO        ($1.10)
 1    PEPSI                     $6.20
 1    ORGANIC ROOT OLIV         $6.70
 1    SMOKE CLAMS POUCH         $2.45
 4    Debit Card                $4.00

            Total              $80.00
```



B"H

Federal inmates should note that the ceremonial meal extended to every faith group in the BOP is usually held by Jews on Passover. If this is so in your facility, be aware that this meal should include other foods besides the basics of Matzah, grape juice, Seder plates and the motzi Kosher for Passover dinners. Although the meal varies from one institution to another, at the very least it should included Kosher for Passover Matzah, grape juice, soup, gefilte fish, chicken or meat, and horseradish. Macaroons are also usually available. If you feel that preparations are not being made properly in your facility (including SPO's) please contact our office as soon as possible. (If you are having problems reaching Aleph, please have a relative or friend contact us.)

## Discounted Prices for Inmate Special Purchase Orders & Commissaries Only!

Aleph would like to encourage BOP commissary and business office staff to order in bulk for the commissary instead of processing separate SPO's. In order to know how much to order, the inmates should be given the forms to fill out and the forms should be collected by the commissary and totaled up. The commissary can then use those numbers to decide how much to order of each item. This saves everyone a lot of time, money and effort. Aleph is also willing to ship individual inmate orders directly to Chaplains in state institutions if approved.

## Inmate S.P.O. and Commissary Passover Order Form

FAX TO: (305) 864-5675 OR MAIL TO: ALEPH INST. P.O. BOX 547127, SURFSIDE, FLORIDA 33154
OR E-MAIL TO: passover@alephinstitute.org  • DEADLINE FOR ORDERS: MAR. 9, 2009
(All food items are certified Kosher for Passover.) For info call: 305-864-5553

MR./MS.: _____   INSTITUTION: _____

TEL: ( ) ____ - ____ ext. ____   FAX: ( ) ____ - ____   Email _____

| ITEM | PRICE | QUANTITY | TOTAL | ITEM | PRICE | QUANTITY | TOTAL |
|---|---|---|---|---|---|---|---|
| MATZAH  1 lb. box  30 per case | $1.50 | | | SHELF STABLE CHICKEN & MATZAH BALL SOUP (non-gebrokts) (12 oz. in Rexon Plastic)  12 per case | $3.00 | | |
| SHMURAH MATZAH (special handmade)  1 lb. box | $9.50 | | | SHELF STABLE CHICKEN W/ POTATOES (12 oz. in Rexon Plastic)  12 per case | $3.00 | | |
| GRAPE JUICE (4 x 6.75 oz.) (Paper juice boxes)  10 per case | $2.50 | | | SHELF STABLE BEEF GOULASH AND VEG. (12 oz. in Rexon Plastic)  12 per case | $3.00 | | |
| HORSERADISH WHITE SAUCE SPREAD* (10 oz. Squeeze bottle)  12 per case | $1.75 | | | SHELF STABLE GEFILTE FISH (12 oz. in Rexon Plastic)  12 per case | $3.00 | | |
| SHELF-STABLE SALMON FISH (3 oz. POUCH)  12 per case | $2.50 | | | SHELF STABLE BEEF STUFFED CABBAGE (12 oz. in Rexon Plastic)  12 per case | $3.00 | | |
| SOUP BOUILLON CUBES (package of 3)  12 per case | $1.00 | | | CHOCOLATE Bittersweet (3.5 oz.) | $1.50 | | |
| MACAROONS | | | | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

AGNES KOLE,

    Plaintiff,

v.

FCI DANBURY,
US BUREAU OF PRISONS,
DONNA ZICKEFOOSE OR SUCCESSOR
    Warden of FCI Danbury,
FELIPE RODRIGUEZ,
    Associate Warden, FCI Danbury,
WAYNE SCHOONMAKER,
    Chief, Inmate Services,

    individually and in their
    official capacities,

    Defendants.

FILED
2009 NOV 17 P 2:02
U.S. DISTRICT COURT

MEMORANDUM OF LAW
IN SUPPORT OF
COMPLAINT

Civ. Action No. 3:09CV1865(JCH)

## ARGUMENT

1. The Defendants' vendor change substantially burdens my exercise of my religious beliefs.

"Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." O'Lone v. Est. of Shabazz, 482 US 342, 348 (1987)(quotations and citations omitted). These protections include First Amendment rights protecting the free exercase of religion. Ibid.

Under the First Amendment, a prison policy that impinges religious exercise is constitutional only if it is "reasonably related to a legitimate penal interest." Turner v. Safley, 482 US 78, 89 *1987). A petitioner alleging that a prison policy unlawfully burdens her free exercise of religion must show that the disputed policy "substantially burden's [her] sincerely held religious beliefs." Ford v. McGinnis, 352 F.3d 582, 591 (2d Cir. 2003).

The substantial burden test must inquire whether the restricted practice is important to the religious practice overall. Ibid. However, a

religious practice need not be mandatory to warrant First Amendment protection: "Our fonding principles require that courts resist the dangerous temptation to try to judge the significant of particular devotional obligations to an observant practitioner of faith." McEachin v. McGuynnis, 357 F.3d 197, 201 (2d Cir. 2004). See also Moskowitz v. Wilkinson, 432 F.Supp. 947, 949 (DCt 1977). See generally Hernandez v. CIR, 490 US 680, 699 (1987)("not within judicial ken to question centrality of belief").

In this case, the change in vendor policy has resulted in such a significant increase in pracies for the Kosher for Passover food tiems that these items are now virtually unavailable. This case thus differs from the facts in Kole v. Lappin, 551 F.Supp.2d 149, 154 (DConn 2008), where this Court relied in part on the availability of some supplementary food items to conclude that Kole's rights to keep Kosher during Passover had not been unlawfully burdened.

This change in vendor policy also violated the Religious Land Use and Institutinalized Persons Act of 2000 because thereis no compelling government interest to fustify the infringement. See Salahuddin v. Goord, 467 F.3d 263 (2d Cir. 2006). Continued use of the Aleph Institute would impose no burden on the government. Similarly, the Religous Freedom Restoration Act, which continues to apply to the federal government, is also violated by this policy. Madison v. Ritter, 355 F.3d 310, 315 (4th Cir. 2003).

2. The vendor change violates Kole's equal protection rights because it subjects Jewish inmates to a more restrictive supplemental holiday commissary policy than that applied to the Christian and Muslim inmates.

"The Equal Protection clause entitles each prisoner to a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Cruz v. Beto, 405 US 319, 322 (19720. To establish an equal protection violation, a plaintiff must show purposeful discrimination where members of

memorandum
3

a protected class are deliberately treated differently than others. Ibid.

In this case, the Defendants have attempted to justify their change in vendors by arguing that, unlike Aleph, the new vendor is able to meet the demand of the general inmate population year-round for the Kosher for Pasover items on commissary. However, thereis no comparable "year round availability" policy for the Christian and Muslin holiday-unique items. That is, the Commissary makes available certain holiday-only items for Christians during Christmas and for Muslims during Rammahdan. These items are not made available year-round but during the respctive holiday season only. Because they are seasonal only, these Muslim and Christian holiday items are able to be obtained from vendors at reasonable prices, and sold commensurately to the inmate population. It is the commissary policy of subjecting only Kosher for Passover items to be available year-round that has raised their prices to a prohibitive level. This disparate treatment serves no rational purpose: the reasoning behind adding Kosher for Passover food items to the regular commissary list is, ostensibly, to have supplemental food items available for Jewish inmates during the Passover season. The goal to make these items available yearround has no relationship to their availability during the Passover season, which is the only time that is meaningful.

3.   The change in vendors is unlawful retaliation for Kole's prior use of the grievance and judigical processes.

To establish a First Amendment retaliation claim, a prisoner must show that "(1) the speech or conduct at issue was protected, (2) that the Defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004)(quotation omitted). In the prison context, the alleged retaliation must be conduct "that would

deter a similarly situated individual of ordinary firmness from exercising...constitutional rights." Gill, 389 F.3d at 381.

A prisoner's filing of a federal lawsuit to vindicate her rights is protected, First Amendment activity. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995); Espinal v. Goord, 554 F.3d 216, 227 (2d Cir. 2008). Access to BoP administrative grievance procedures is similarly protected as part of the broad right to petition government for redress of grievances. Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988). See UMW v. Illinois Bar, 389 US 217, 222 (1967)(right to petition for redress of grievances is among most precious of liberties preserved by Bill of Rights).

Under these cases, Kole's prior use of the BoP grievance procedure, and her institution of a federal lawsuit, in 2007-2008, regarding the termination of the Kosher for Passover SPO program, and her use of the BoP grievance procedure to protest the 2009 change of vendors, were all activities protected under the First Amendment.

Adverse action must be material and can include a loss of benefits, as part of unlawful retaliation. Mathirampuzhar v. Potter, 548 F.3d 70, 78 (2d Cir. 2008)(quotation omitted). Compare Zelnik v. FIT, 464 F.3d 2117, 224 (2d Cir. 2006). The determination of adverse action is fact-specific. Hoyt v. Andreucci, 433 F.3d 320, 328 (2d Cir. 2006). In the prisn context, denial of Kosher foods can constitute adverse action. Davidson v. Chestnut, 193 F.3d 144 92d Cir. 1999).

In this case, it is clear that the change in vendor for Kosher for Passover food items resulted in adverse action. By ceasing use of the Aleph Institute. the FCI Danbury commissary no longer had available a source of Kosher for Passover food items at discount prices. Instead, the new vendor provided Kosher for Passover items at significantly increased prices, some several hundred percent higher. In the prison environment,

inmates have available personal items, including food, only as offerred via commiary purchases. Thus the commissary is an important benefit. Inmates also typically have limited funds available, especially as prison jobs provide only token pay. Against this background the exorbitant pricing renders these Kosher for Passover items essentially unavailable, especially as compared to the pricing available from the Aleph Institute.

As to causation, the change in vendor occurred closely on the heels of the 2007-08 Kosher for Passover litigation started by Kole. Temporal proximity is a strong indicaton of causation. Espinal v. Goord, 554 F.3d 216 (2d Cir. 2008); Cifra v. GE, 252 F.3d 205, 217 (2d Cir. 2001). As well, a failure to follow uniform procedures may also indicate an improper objecton. Abdulwoli v. Coughlin, 754 F.2d 1015, 1021 (2d Cir. 1985).

In this case, the change in vendor occurred closein time to prior, protected activity by Kole. Also, the change in vendor was a dramatic change from uniform procedures. For the Christian and Muslim holiday seasons, the commisary only makes specialty holiday items availble during the actual holiday season. It is not concerned with year-long availability for those faiths' holiday items. That concern about year-long availability has been voiced only for the Jewish inmates and their Passover seasonal items. It is too much of a coincidence that this change in policy (seeking year-long availability should only be applied to Jewish holiday seasonal items and that this change should occur on the heels of the earlier, Kosher for Passover litigation. In these circumstances, it is a fair inferenc that the change in vendor policy was caused by protected activity.

Based on the above, the removal of reasonably priced Kosher for Passove benefits would reasonably convince an inmate of ordinary firmness of the cost associated with resort to the courts, especially as the prior lawsuit had received a fair amount of publicity in the prison and community. Accordingly, the change in vendor was unlawful retaliation.